# MARY E. UPDEGRAFF WOOTEN, Respondent, v. MARY E. CLAY DAHLQUIST, Appellant.

[244 Pac. 407.]

MORTGAGES — ACCELERATION CLAUSE — DEFAULT — WAIVER — FORECLOSURE — FINDINGS — TENDER — CONDEMNATION OF MORTGAGED REAL PROPERTY—EFFECT ON RIGHTS OF PARTIES—PLEADING ATTORNEY FEE—EVIDENCE.

1. Where a note and a mortgage securing the same provide for an option to the mortgagee to accelerate the due date of the principal in case of default in an interest payment, such right of acceleration is not waived on the part of the mortgagee by a delay of nearly one year after default before commencing foreclosure proceedings, when it is not shown that the delay has operated to the benefit of the mortgagee or the detriment of the mortgagor.

2. In an action to foreclose a mortgage under the option of accelerating the due date of the principal by reason of default in payment of interest, the defense of waiver of the option on the part of the mortgagee cannot be set up by the mortgagor unless it is plead in the answer.

3. A finding of the district court in an equity case will not be disturbed on appeal simply because there is a conflict in the testimony or for the reason that it is possible to draw another conclusion from the evidence.

4. A tender of money, in order to be legally effective, must be shown to have been an actual offer to pay a certain sum to a person entitled to receive it, coupled with a present ability to make such payment.

5. *Held*, as a matter of law, that no proper tender of the interest money involved in this case is shown by the evidence to have been made.

6. A contract of indebtedness, evidenced by a promissory note and secured by a mortgage on real property, cannot be impaired as to the rights and liabilities of mortgagor and mortgagee by the intervention of a third party through the institution of a suit for the condemnation of part of the property.

7. An agreement inserted in a note and mortgage to pay an attorney fee in the event of suit being brought to collect the note and foreclose the mortgage may be pleaded either by

setting forth *in haec verba* the provisions of such instruments to that effect, or by language pleading their legal effect.

8. *Held,* that there being no allegation in the answer that the sum of $200 fixed in the note and mortgage is not a reasonable attorney fee, and there being some evidence that plaintiff in the foreclosure action had agreed to pay not less than $200 as such fee, the lower court committed no error in awarding the attorney fee.

APPEAL from the District Court of the Second Judicial District, for Latah County. Hon. Edgar C. Steele, Judge.

Action for foreclosure of mortgage. Judgment for plaintiff. *Modified and affirmed.*

Benjamin F. Tweedy, for Appellant.

The right to accelerate payment of the mortgage on the alleged nonpayment of interest was waived by the delay of almost one year before commencement of the action, and therefore the respondent had no right to commence the action at the time she did. (*Crossmore v. Page,* 73 Cal. 213, 2 Am. St. 789, 14 Pac. 787.)

The court has equity jurisdiction over the funds arising from appropriation of property as between a mortgagee and a mortgagor. (*State v. Superior Court,* 80 Wash. 417, 141 Pac. 906; *State v. Clausen,* 94 Wash. 166, 162 Pac. 1; *State v. Superior Court,* 71 Wash. 354, 128 Pac. 648.)

Publisher's Note.

3. See 2 R. C. L. 204.

4. See 26 R. C. L. 626.

See Appeal and Error, 4 C. J., sec. 2869, p. 899, n. 93; sec. 2870, p. 900, n. 99; p. 901, n. 2 New.

Bills and Notes, 8 C. J., sec. 1436, p. 1101, n. 66.

Mortgages, 27 Cyc., p. 1523, n. 4; p. 1533, n. 62; p. 1550, n. 94 New; p. 1594, n. 8; p. 1611, n. 81; p. 1620, n. 59; p. 1785, n. 33; p. 1787, n. 39.

Payment, 30 Cyc., p. 1221, n. 1.

Tender, 38 Cyc., p. 131, n. 1; p. 132, n. 2; p. 141, n. 65, 66; p. 142, n. 70, 74; p. 150, n. 92; p. 179, n. 17; p. 180, n. 24.

The Idaho statutes require payment to the mortgagee of his interest in the property sought for a public use. (C. S., sec. 7414.)

Courts of equity interpose and distribute the funds arising from the condemnation of lands, so that the rights of the owners of interests in the condemned land shall suffer no harm, which owners of interests in the land condemned include mortgagees. (15 Cyc. 794, 799, 800.)

The forced purchase of mortgaged land for public use wholly extinguishes the mortgage as to the land taken by condemnation. (*Griggs v. Edelbrock,* 59 Minn. 485, 61 N. W. 555.)

The district court of the second judicial district could get jurisdiction over the subject matter through change of venue only, and the supreme court has held that the action was pending in Nez Perce county. (*Wooton v. Dahlquist,* 40 Ida. 283, 232 Pac. 580.)

Fred E. Butler and Edward C. Butler, for Respondent.

The condition for the payment of interest had not been performed. (*Winne v. Colorado Springs Co.,* 3 Colo. 155; *Machold v. Farnam,* 20 Ida. 80, 117 Pac. 408; *McCauley v. Leavitt,* 10 Utah, 91, 37 Pac. 164; Jones on Mortgages, 7th ed., par. 708; 38 Cyc. 143, 158, 163; Elliott on Contracts, pars. 1959, 1962, 1974, 1975; 20 C. J. 855.)

Respondent did not waive the right to accelerate the payment of the principal. (*Glas v. Glas,* 114 Cal. 566, 55 Am. St. 90, 46 Pac. 667, and cases cited; *Kansas Loan & Trust Co. v. Gill,* 2 Kan. App. 488, 43 Pac. 991.)

The commencement of the eminent domain proceedings did not suspend the right to accelerate payment and the Lapwai Valley Highway District is neither a necessary nor indispensable party. (C. S., sec. 7405; Jones on Mortgages, par. 1395; *Frost v. Idaho Irr. Co.,* 19 Ida. 372, 114 Pac. 38.)

Attorney fees were properly allowed for plaintiff's attorney. (*Orange Growers Bank v. Duncan,* 133 Cal. 254, 65 Pac. 469; *Huber v. Shedoudy,* 180 Cal. 311, 181 Pac. 63.)

The district court of the second judicial district had jurisdiction of the action.    (C. S. 6666–6669.)

BUDGE, J.—This action was commenced for the foreclosure of a mortgage upon lands in Nez Perce county on February 24, 1923, said mortgage bearing date March 17, 1920, securing payment of a note in the principal sum of $2,500, and executed by the appellant to Clermont B. Updegraff, by whom the note and mortgage were assigned to the respondent. The appeal is from a decree of foreclosure entered in favor of the respondent. Appellant's assignments of error will be considered in the order made.

[1, 2]    It is first contended that the right to accelerate the due date of the principal by reason of nonpayment of interest was waived by delay of nearly one year before commencing foreclosure. Under this head appellant's contention is that the complaint does not state facts sufficient to constitute a cause of action; that the court erred in overruling her demurrer thereto, and erred in overruling her motion for a nonsuit, and that finding No. VI is against the evidence.

The promissory note in question contains the following provision: "Interest to be paid annually, and if not so paid the whole sum of both principal and interest to become immediately due and collectible at the option of the holder of this note."

The mortgage has a similar clause, as follows: "If the interest be not paid as therein (in the note) specified, then it shall be optional with the party of the second part, his executors, administrators or assigns, to consider the whole of said principal sum expressed in said note as immediately due and payable."

Appellant insists, admitting for argument only, that a default in the payment of interest existed from March, 1922, on; that there was a delay of nearly a year in commencing the foreclosure proceedings and by reason of such delay there was a waiver on the part of respondent to exercise his right to accelerate payment of the principal, and

that the language of the note and mortgage above quoted should be construed as requiring the mortgagee to exercise the option of acceleration immediately after default, and therefore the action was prematurely brought. Such language as is used in the note and mortgage means that the principal becomes due immediately upon exercise of the option. (*Tourny v. Bryan*, 66 Cal. App. 426, 226 Pac. 21; *Cook v. Strelau*, 127 Wash. 128, 219 Pac. 846; *Jump v. Barr*, 46 Cal. App. 338, 189 Pac. 334; *Damet v. Aetna Life Ins. Co.*, 72 Okl. 122, 5 A. L. R. 434, 179 Pac. 760; *Hewitt v. Dean*, 91 Cal. 5, 27 Pac. 423.) No waiver of the right of acceleration was pleaded in appellant's answer, and therefore such defense may not be set up. (*Washburn v. Williams*, 10 Colo. App. 153, 50 Pac. 223.) The right to exercise the option continues, and is not waived by a mere delay which has not operated to the benefit of the mortgagee or to the detriment of the mortgagor. (*Damet v. Aetna Life Ins. Co., supra; Kansas Loan & Trust Co. v. Gill*, 2 Kan. App. 488, 43 Pac. 991.) In the instant case there is no showing of any benefit to the respondent by the delay, rather the contrary, nor of any detriment to the appellant. True it is that some states hold the option may only be exercised within a reasonable time after default, but a definite rule is preferable to one that is made to vary with the circumstances. For cases in which the courts have passed upon the question of what would constitute a reasonable time, see *Hewitt v. Dean, supra,* three months; *Glas v. Glas*, 114 Cal. 566, 55 Am. St. 90, 46 Pac. 667, eight months, stating that it is not in conflict with the preceding case, and practically accepting the rule that some detriment must be shown by the mortgagor; *Cook v. Strelau, supra,* nine months. There is no particular reason why the mortgagor should be entitled to continued indulgence as a right. We are accordingly of the opinion that appellant's contention is without merit.

In finding No. VII the court found that Clermont B. Updegraff did not pay to the respondent the balance of interest due on the mortgage indebtedness; that he did not agree to

pay such interest. There is evidence for respondent to the effect that Updegraff advanced money on his own initiative to the respondent, his mother, for the reason that she was in need of money and the interest due from appellant had not been paid; that he did not know what amount he had so advanced, but that it was not the full amount of interest due, and that he had not told respondent that it was interest, and that he would not indorse anything on the note, then in his possession, unless it had been paid by appellant. 30 Cyc. 1221 gives the rule that "it is now well settled that payment of a debt by a stranger, although without the debtor's request, if accepted as such by the creditor, discharges the debt so far as the creditor is concerned." There is lacking in the instant case the intention to pay another's debt, its payment in full, and acceptance by the creditor as such payment. [3] The court's finding that there had been no payment of the balance of the interest due has sufficient support in the evidence, and in accordance with the repeated ruling of this court it will not be disturbed upon appeal simply because there is a conflict in the testimony, or that it is possible to draw another conclusion from the evidence.

[4] It is also argued in appellant's brief that a tender of the overdue interest was made by appellant to Updegraff as respondent's agent, and accordingly that at the time of commencement of this action respondent had nothing other than a simple action to recover such interest, in amount $125. It appears that appellant with her son in April, 1922, went to the bank in Culdesac, of which Updegraff was president, and inquired for him, but was told by the cashier that Updegraff did not want to see her; that she called him up at his residence over the telephone, and said that she was up to the bank "to fix up matters," to "attend to our business matters," and asked him to come to the bank, and that he referred her to his attorney at Lewiston, in whose hands the matter had been placed. Neither appellant nor her son informed anyone at the bank that their errand was to pay money; neither did she make that statement to

Updegraff. She did not afterwards send or pay the sum of $125 to Updegraff or respondent. "Tender is an offer to . . . . pay money coupled with a present ability to do the act. It imports . . . . the actual production of the thing to be paid or delivered, and an offer of it to the person to whom the tender is to be made." (38 Cyc. 131.) The tender must be definite and certain in character so as to leave no reasonable doubt that the tenderer intended at the time to make full and unconditional payment. (38 Cyc. 141.) In making a tender there must be an actual offer to pay. (38 Cyc. 142. See, also, 26 R. C. L. 622–627.) In explanation of his action, Updegraff stated that appellant frequently called him up over the telephone to talk over the mortgage, and as the matter had been placed in the hands of his attorney, she was referred to such attorney, but that if she had mentioned payment of money, he would have come to the bank at once. According to the rule before stated, tender requires both the ability to pay and an offer to pay. From the fact that no subsequent attempt was made by appellant to pay the money due, and the indefinite language used on this occasion, the trial court might have concluded that she did not have the ability to make payment.

[5] We believe we are correct in holding as a matter of law that no proper tender was shown. Whether or not there was a tender made was a question of fact for the court, and we therefore conclude that no sufficient reason has been shown that would justify us in disturbing the finding complained of.

[6] It appears that an eminent domain proceeding had been commenced by the Lapwai Valley Highway District to condemn a right of way for a road from one corner of the mortgaged premises to the other, and there is evidence to the effect that prior to the commencement of the foreclosure action, respondent's agent had been offered the sum of $266 as damages to her interest as mortgagee. It further appears that she has no objection to accepting this sum. Appellant contends that this offer, whether accepted or not by the respondent, operated to pay the interest otherwise overdue

upon the mortgage, inasmuch as respondent made no defense to the eminent domain proceeding. It is not clear whether or not there has been a final judgment of condemnation in the eminent domain proceeding. On principle, it would seem that the intervention of the highway district, *in invito,* so far as the mortgagor and mortgagee were concerned, should not affect the contractual liabilities and rights of the parties, and did not nullify or postpone appellant's agreement to pay interest at the time specified in the note. In her testimony appellant professed to have no right to stop payment of this award, or to control respondent's acceptance of the same, but on the trial contended that it should have been applied in payment of the overdue interest. The condemnation proceedings wiped out part of the security which respondent had for the payment of the indebtedness, and if it be considered that respondent has received or is entitled to receive payment of the award, she had the right to apply the amount of the award upon the principal of the mortgage indebtedness, thereby substituting the award in lieu of the land taken. The commencement of the foreclosure action constituted an election on her part to exercise her option to declare the entire mortgage indebtedness due by reason of the failure upon the part of the appellant to pay the interest as stipulated in the note and mortgage.

In its finding No. VIII the trial court found that the Lapwai Valley Highway District did not tender $266, or any other sum to respondent or to Updegraff, and that neither respondent nor Updegraff was obliged or required to accept any sum of money from the highway district by reason of the alleged eminent domain proceedings. Such finding is not supported by the evidence. There is evidence that $266 awarded by the highway commissioners was offered to Updegraff; that at appellant's request he did not take it; that he was a party defendant to the condemnation proceedings, being the record owner of the mortgage, though the same had actually been assigned to respondent, but had made no defense thereto. If the eminent domain proceed-

ings have gone to an award it is clear that the amount thereof should be credited upon the principal of the mortgage debt.

The next contention is that the highway district was a necessary party defendant to the foreclosure proceedings, and that the pendency of the eminent domain proceedings suspended foreclosure of the mortgage; that the trial court erred in its judgment decreeing a foreclosure of the entire mortgaged premises including the right of way. As to the highway district, it is elementary that whatever rights it had are not affected by proceedings to which it is not made a party. The right which the highway district acquires by the eminent domain proceedings is an easement for public road purposes. Title to the land, subject to such easement, still continues in the party owning the fee. The entire premises were mortgaged to respondent, and she is entitled to foreclose her mortgage against the whole thereof, including the reversion should the highway be subsequently abandoned.

In *Bellows v. Los Angeles Dock & Terminal Co.*, 56 Cal. App. 168, 204 Pac. 858, the following language is used:

"The pendency of the condemnation suit possibly might have operated to abate the present action if an attempt had been made to try the latter first, but that attempt was not made. As found by the trial court in the finding set forth above, the judgment in the condemnation suit had been rendered and had become final before the trial of the present action. To say that the condemnation suit operated to bar the present action would be to say that respondent could not foreclose as to one-third of the mortgage debt, although no previous foreclosure suit had been commenced by him. The only possible effect of the condemnation suit, it having been tried before this action, was, first, to remove a part of the land from the scope of this suit, (not true where only an easement is taken), and, second, to operate as a basis for a showing that a part of the mortgage debt had been paid through the condemnation proceeding."

If there has been no judgment and assessment of damages in the highway district's action, the statement in the case quoted that "part payment could not have been alleged at the time the answer was filed, for part payment had not then been made" applies. We further quote from the same case:

"Appellant had contracted to pay instalments of interest at stated times, and had agreed what the consequences should be of a failure to pay. We are unable to perceive that this contract was abrogated by the intervention of a third party through the institution of the condemnation suit. Suppose that suit had been dismissed, or that for some reason it had resulted unfavorably to the desires of the condemnor. Under such circumstances, could appellant have justified its failure to pay the interest? It surely could not. . . . . "

[7] Appellant next brings up respondent's right to a judgment including $200 attorney's fees, for the reason that no allegation was made in the complaint that such sum was reasonable or that any liability had been incurred to pay that amount, and objected to the reopening of the case after trial for the purpose of making such proof. The agreement to pay an attorney fee in the event of suit being brought to collect the note and foreclose the mortgage may be pleaded either by setting forth *in haec verba* the provisions of the instruments to that effect, or by language pleading their legal effect. The bringing of the suit is judicially noticed; the amount of the fee fixed by the instruments is at least *prima facie* recoverable. (8 C. J. 1101.) [8] There is no allegation in the answer that the sum of $200 fixed in the note and mortgage is not a reasonable fee. Under such circumstances and in view of the fact that there was some evidence that respondent had agreed to pay as an attorney fee not less than $200, the court did not err in awarding the attorney fee.

It is last contended that the district court of the second judicial district for Latah county had no jurisdiction of this action, and the court's finding that it had is against the

holding in *Wooton v. Dahlquist,* 40 Ida. 283, 232 Pac. 580. In that case it is held that where the venue of a case had been improperly changed from one district and county to another, but the case had been retransferred to the first county, an appeal to this court on the question of venue presents but a moot question. It appears however in this case, that subsequently to such retransfer to Nez Perce county the appellant objected to trial therein on account of the prejudice of the presiding judge, and stated in writing her willingness that the case be sent back to Latah county and tried therein. A proper order was made by the court to that effect. Under such circumstances appellant consented to trial in Latah county.

The trial court is directed to credit the $266 on the amount found due and as so modified the decree is affirmed. Costs are awarded to respondent.

William A. Lee, C. J., and Wm. E. Lee, Givens and Taylor, JJ., concur.

Petition for rehearing denied.